**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

ANN JONES, individually and on behalf of
all others similarly situated,

      Plaintiff,

      v.

BLOOMINGDALES.COM, LLC,

      Defendant.

Civil Case No. 4:22-CV-01095-SEP

**<u>DEFENDANT BLOOMINGDALES.COM, LLC'S MEMORANDUM IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 3

I.        BLOOMINGDALES.COM IS NOT SUBJECT TO PERSONAL
        JURISDICTION IN MISSOURI. ...................................................................... 3

        A.     The Complaint Fails To Plead Purposeful Direction. ............................... 3

        B.     The Complaint Fails To Plead That Plaintiff's Claims Arise Out of or
              Relate to Bloomingdale's Forum Contacts. ............................................. 7

II.       PLAINTIFF FAILS TO STATE ANY CLAIMS. .............................................. 8

        A.     The Wiretap Claims (Counts I & VI) Should Be Dismissed. ................. 8

              1.     Any Interception Was Permitted Under the One-Party Consent and
                    Party Exemptions. ......................................................................... 8

              2.     Plaintiff's Communications Were Not Intercepted. ................... 11

        B.     The Derivative State Claims Should Be Dismissed. ............................. 14

              1.     The Missouri Merchandising Practices Act Claim (Count II)
                    Should Be Dismissed. ................................................................... 14

              2.     The Intrusion Claim (Count III) Should Be Dismissed. ........................ 15

              3.     The Trespass And Conversion Claims (Count IV & V) Should Be
                    Dismissed. ..................................................................................... 17

        C.     The Derivative Federal Claims Should Be Dismissed. ......................... 18

               1.     The Access Claims (Counts VIII & X) Should Be Dismissed. ............... 18

              2.     The Disclosure Claims (Counts VII & IX) Should Be Dismissed........... 20

CONCLUSION................................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Quicken Loans Inc.*,
2018 WL 5874088 (D.N.J. Nov. 9, 2018) ...........................................................................10

*Allied Ins. Co. of Am. v. JPaulJones L.P.*,
491 F. Supp. 3d 472 (E.D. Mo. 2020)..................................................................................4

*Ashford v. Douglas Cnty.*,
880 F.3d 990 (8th Cir. 2018) ...............................................................................................15

*Brothers & Sisters in Christ, LLC v. Zazzle, Inc.*,
42 F.4th 948 (8th Cir. 2022) ......................................................................................3, 6, 7, 21

*Burgess v. Am. Fam. Mut. Ins. Co.*,
2007 WL 1452512 (W.D. Mo. May 15, 2007) ....................................................................17

*Calder v. Jones*,
465 U.S. 783 (1984)..............................................................................................................6

*Cardoso v. Whirlpool Corp.*,
2021 WL 2820822 (S.D. Fla. July 6, 2021)....................................................................13, 14

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010).................................................................................................11

*Creative Calling Sols., Inc. v. LF Beauty Ltd.*,
799 F.3d 975 (8th Cir. 2015) ...............................................................................................3

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ..............................................................................13

*Curne v. TraxNYC Corp.*,
2019 WL 1980705 (W.D. Mo. May 3, 2019) .......................................................................5

*DirecTV, Inc. v. Lehmkuhl*,
2005 WL 8176893 (E.D. Mo. Feb. 10, 2005).......................................................................8

*Doe v. Washington Univ.*,
2021 WL 4504387 (E.D. Mo. Sept. 30, 2021)....................................................................15

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001).............................................................................10, 11

*Dyer v. Nw. Airlines Corps.*,
    334 F. Supp. 2d 1196 (D.N.D. 2004) ...................................................................20

*Est. of Byas v. Wells Fargo Home Mortg.*,
    2020 WL 7240352 (E.D. Mo. Dec. 9, 2020) .......................................................15

*Foremost Ins. Co. v. Pub. Serv. Comm'n of Mo.*,
    985 S.W.2d 793 (Mo. Ct. App. 1998) ................................................................17

*Gleason v. Intertek, USA, Inc.*,
    2020 WL 7624837 (E.D. Mo. Dec. 22, 2020) .......................................................3

*Goellner-Grant v. Platinum Equity LLC*,
    341 F. Supp. 3d 1022 (E.D. Mo. 2018) ...............................................................6

*Goldstein v. Costco Wholesale Corp.*,
    559 F. Supp. 3d 1318 (S.D. Fla. 2021) .............................................................13

*Goodman v. Goodman*,
    2022 WL 17826390 (S.D.N.Y. Dec. 21, 2022) ...................................................19

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    806 F.3d 125 (3d Cir. 2015) .................................................................9, 11, 19

*In re Google Inc. Gmail Litig.*,
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ...................................................11

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................................9

*Gridiron Mgmt. Grp. LLC v. Wranglers*,
    2012 WL 5187839 (D. Neb. Oct. 18, 2012) ......................................................19

*Hahn v. Tanksley*,
    317 S.W.3d 145 (Mo. Ct. App. 2010) ...............................................................17

*Hennessey v. Gap, Inc.*,
    2022 WL 4447399 (E.D. Mo. Sept. 23, 2022) ...................................................14

*Howard v. Frost Nat'l Bank*,
    458 S.W.3d 849 (Mo. Ct. App. 2015) ...............................................................16

*Hug v. Am. Traffic Sols., Inc.*,
    2014 WL 2611832 (E.D. Mo. June 11, 2014) ...................................................14

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
    2007 WL 4394447 (E.D. Pa. Dec. 13, 2007) ....................................................13

*Jackson v. Charlie's Chevrolet, Inc.*,
　664 S.W.2d 675 (Mo. Ct. App. 1984)................................................................15

*Jacome v. Spirit Airlines Inc.*,
　2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ........................................13, 14

*Johnson v. Arden*,
　614 F.3d 785 (8th Cir. 2010) ......................................................................3, 4

*Johnson v. Gawker Media, LLC*,
　2016 WL 193390 (E.D. Mo. Jan. 15, 2016) ......................................................5

*Jurgens v. Build.com, Inc.*,
　2017 WL 5277679 (E.D. Mo. Nov. 13, 2017)................................................9, 11

*Konys v. Krause-Werk GmbH & Co. KG*,
　2020 WL 5230841 (E.D. Mo. Sept. 2, 2020)......................................................6

*L.L. Nelson Enters., Inc. v. Cnty. of St. Louis*,
　673 F.3d 799 (8th Cir. 2012) ......................................................................20

*Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg. & Consulting, LLC*,
　600 F. Supp. 2d 1045 (E.D. Mo. 2009)............................................................18

*Leitner v. Morsovillo*,
　2022 WL 7074322 (W.D. Mo. Oct. 12, 2022).....................................................14

*Lewellen v. Raff*,
　843 F.2d 1103 (8th Cir. 1988) ......................................................................10

*Low v. LinkedIn Corp.*,
　900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................17

*Mason v. Mach. Zone, Inc.*,
　140 F. Supp. 3d 457 (D. Md. 2015) ................................................................12

*Massie v. Gen. Motors Co.*,
　2021 WL 2142728 (E.D. Cal. May 26, 2021) ..........................................1, 5, 6, 7

*McMasters v. Hendrickson USA, LLC*,
　2016 WL 5796908 (W.D. Ky. Sept. 30, 2016).....................................................17

*Meredith v. Gavin*,
　446 F.2d 794 (8th Cir. 1971) ........................................................................8

*Mighty Good Sols., LLC v. Universal GP Prods., LLC*,
　2021 WL 5548144 (W.D. Mo. Nov. 22, 2021).......................................................6

*Miguel Licea v. Caraway Home Inc.*,
2023 WL 1999496 (C.D. Cal. Feb. 9, 2023)........................................................5

*Missouri Ozarks Radio, Network, Inc. v. Baugh*,
598 S.W.3d 154 (Mo. Ct. App. 2020)................................................................17

*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016).....................................................18

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)...............................................................................10

*Petri v. Valarity, LLC*,
2015 WL 7253061 (E.D. Mo. Nov. 17, 2015).....................................................16

*Pipeline Prods., Inc. v. S&A Pizza, Inc.*,
2020 WL 4506090 (W.D. Mo. Aug. 5, 2020)......................................................20

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019).................................................................16

*Pope v. Cordell*,
47 Mo. 251 (Mo. 1871)......................................................................................17

*Potter v. Havlicek*,
2008 WL 2556723 (S.D. Ohio June 23, 2008) ...................................................12

*Riley v. L.J. Schuster Co.*,
844 S.W.2d 521 (Mo. Ct. App. 1992).................................................................18

*Sacco v. Mouseflow, Inc.*,
2022 WL 4663361 (E.D. Cal. Sept. 30, 2022)......................................................4

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................................16

*Schriener v. Quicken Loans, Inc.*,
774 F.3d 442 (8th Cir. 2014) .............................................................................15

*SKF USA, Inc. v. Bjerkness*,
636 F. Supp. 2d 696 (N.D. Ill. 2009) .................................................................19

*Sofka v. Thal*,
662 S.W.2d 502 (Mo. 1983) ..............................................................................16

*State v. King*,
873 S.W.2d 905 (Mo. Ct. App. 1994).................................................................9

*State v. Rowe*,
   63 S.W.3d 647 (Mo. 2002) ...............................................................................12

*Steve Jackson Games, Inc. v. U.S. Secret Serv.*,
   36 F.3d 457 (5th Cir. 1994) .............................................................................12

*Sutherland v. Massa*,
   2010 WL 11545751 (W.D. Mo. Sept. 16, 2010) ..............................................16

*Tolu v. Reid*,
   639 S.W.3d 504 (Mo. Ct. App. 2021).............................................................14

*United States v. Gregg*,
   829 F.2d 1430 (8th Cir. 1987) .........................................................................12

*United States v. Griggs*,
   54 F.4th 531 (8th Cir. 2022) ..............................................................................9

*United States v. Hoeffener*,
   2018 WL 2996317 (E.D. Mo. May 9, 2018) ...................................................16

*United States v. Sw. Bell Tel. Co.*,
   546 F.2d 243 (8th Cir. 1976) ...........................................................................12

*Vallone v. CJS Sols. Grp., LLC*,
   9 F.4th 861 (8th Cir. 2021) ................................................................................7

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
   646 F.3d 589 (8th Cir. 2011) .............................................................................3

*Walden v. Fiore*,
   571 U.S. 277 (2014)........................................................................................4, 7

*Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*,
   32 S.W.3d 592 (Mo. Ct. App. 2000)...............................................................17

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..........................................................13

**Statutes**

18 U.S.C. § 1030 ....................................................................................................19

18 U.S.C. § 2510 ................................................................................11, 12, 13, 19

18 U.S.C. § 2511 ..........................................................................................8, 10, 11, 20

18 U.S.C. § 2520 ......................................................................................................8

18 U.S.C. § 2701 ................................................................................................18, 19

18 U.S.C. § 2702 ....................................................................................................20

Mo. Stat. § 542.400 ....................................................................................11, 12, 13

Mo. Stat. § 542.402 ........................................................................................8, 10, 11

Mo. Stat. § 542.418 ..................................................................................................8

## INTRODUCTION

This lawsuit is one of many copycat lawsuits challenging the use of "session replay" software that helps companies improve the user experience on their websites.  Bloomingdales.com ("Bloomingdale's"), a New York-based retailer, is one of many companies that use this routine software service.   Plaintiff alleges that Bloomingdale's use of this service constitutes "wiretapping" under Missouri and federal law, but her claims fail for multiple reasons and should be dismissed.

*First*, this Court does not have personal jurisdiction over Bloomingdale's.  The only alleged connection between Bloomingdale's and Missouri is through its nationally accessible website.  Plaintiff does not plead facts showing that Bloomingdale's challenged conduct—the installation and use of session replay software on its website—specifically targeted Missouri.  For similar reasons, another court dismissed a website operator for lack of personal jurisdiction in a wiretapping lawsuit filed in California.  *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *4–6 (E.D. Cal. May 26, 2021).  The same result is warranted here.

*Second*, the Complaint fails to state any claims.  Plaintiff fails to plead a wiretap claim under Missouri or federal law for a simple reason: any alleged interception was statutorily authorized under the party and one-party consent exemptions, because Bloomingdale's is an undisputed party to alleged communications between Plaintiff and Bloomingdale's, and Bloomingdale's consented to any alleged interception of those communications.  The other state and federal claims should be dismissed for similar reasons, as they are all premised on the same deficient wiretapping allegations.

For these and additional reasons set forth below, this Court should dismiss the Amended Complaint.

## BACKGROUND[1]

*Bloomingdales.com's Use of Session Replay Software.*   Bloomingdale's, a New York-based company, uses "session replay" software code to help improve the user experience on its website.  Am. Compl. ¶¶ 2, 6, 16, 28.  The software code was "procure[d]" from session replay vendors and installed on Bloomingdale's website.  *Id.* ¶¶ 1, 4, 51.  The software code allegedly collects information about a visitor's navigation of the website (*e.g.*, mouse clicks, keystrokes).  *Id.* ¶¶ 1, 43.  The "session replay" feature of the software then allows Bloomingdale's to create "a visual reenactment of the user's visit."  *Id.* ¶ 31.

*Plaintiff's Visit to Bloomingdales.com's Website.*   Plaintiff Ann Jones is a Missouri resident who alleges that she visited Bloomingdale's website on an unspecified date.  *Id.* ¶¶ 5, 49.  She alleges that "session replay" technology "intercepted" her movements on the website, including her "mouse movements," "clicks," "keystrokes," and "URLs of web pages visited."  *Id.* ¶¶ 1, 28, 43, 52, 57.

*This Lawsuit.*   Plaintiff filed this putative class action alleging that Bloomingdale's collection of her movements on its website constitutes wiretapping.  *Id.* ¶ 1.  After Bloomingdale's filed a motion to dismiss, Plaintiff filed an Amended Complaint.  The Amended Complaint asserts that Bloomingdale's alleged conduct violates the Missouri and federal Wiretap Acts, as well as a number of state and federal claims premised on the same underlying conduct.  *Id.* ¶¶ 110–258.  Plaintiff seeks to assert these claims on behalf of putative nationwide and Missouri classes of persons "whose electronic communications were intercepted by Defendant or on Defendant's behalf" on the Bloomingdale's website.  *Id.* ¶¶ 98–99.

---

[1] Citations to the Amended Complaint in this motion should not be construed as acceptance by Bloomingdale's of the truth of the allegations in the Amended Complaint.

**ARGUMENT**

## I.   BLOOMINGDALES.COM IS NOT SUBJECT TO PERSONAL JURISDICTION IN MISSOURI.

Plaintiff bears the burden of establishing that this Court may exercise personal jurisdiction over Bloomingdale's. *Brothers & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022). Where, as here, jurisdiction is premised upon a federal statute, a court may not exercise personal jurisdiction over a defendant unless it "comports with the Due Process Clause." *Id.*[2] Personal jurisdiction under the Due Process Clause comes in two forms: general jurisdiction, where a defendant is "essentially at home" in the forum, and specific jurisdiction, where the claims "arise out of or relate to" the defendant's contacts with the forum. *Id.* at 952. Plaintiff does not and cannot allege that Bloomingdale's is subject to general jurisdiction in Missouri.[3] Plaintiff attempts to plead only specific jurisdiction, which requires her to show that (1) Bloomingdale's "purposely directed its activities at the forum state," and (2) her claims "arose out of or relate[] to those activities." *Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010). She fails to do so.

### A.   The Complaint Fails To Plead Purposeful Direction.

Plaintiff alleges no facts plausibly showing that Bloomingdale's purposefully directed its activities toward Missouri. Courts look to "the nature, quality, and quantity of the defendant's contacts" to assess this requirement. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975,

---

[2] Plaintiff must also demonstrate that personal jurisdiction is authorized by the law of the forum state—here, Missouri. *Zazzle*, 42 F.4th at 951. Because Plaintiff fails to satisfy the due process requirement, the Court need not determine whether jurisdiction is authorized by Missouri's long-arm statute. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (taking same approach in affirming dismissal for lack of personal jurisdiction).

[3] Bloomingdale's is not subject to general jurisdiction because it is an Ohio limited liability company with its principal place of business in New York. Am. Compl. ¶ 6; *see Gleason v. Intertek, USA, Inc.*, 2020 WL 7624837, at *2 (E.D. Mo. Dec. 22, 2020) (Pitlyk, J.) (no general jurisdiction over defendant that "is neither incorporated nor has its principal place of business in Missouri").

980 (8th Cir. 2015).  The contacts alleged here are not of the "nature, quality, and quantity" to establish purposeful direction.

Plaintiff pleads no facts showing that Bloomingdale's alleged conduct—installation of "session replay" software and collection of visitor interaction data on Bloomingdale's website (Am. Compl. ¶ 1)—targets Missouri.  Bloomingdale's only alleged connection to Missouri is through its website, which is accessible nationwide.  But "[t]he website's accessibility in Missouri alone is insufficient to confer personal jurisdiction."  *Johnson*, 614 F.3d at 796.  That Bloomingdale's allegedly "market[s] and sell[s] its goods in Missouri" through its website does not change the analysis.  Am. Compl. ¶ 9.  "[S]pecific jurisdiction does not attach simply because a defendant operates a commercial website that is, at some level, interactive and allow[s] for sales into the forum."  *Allied Ins. Co. of Am. v. JPaulJones L.P.*, 491 F. Supp. 3d 472, 477–78 (E.D. Mo. 2020) (no jurisdiction over website operator where there was "no evidence that [the website operator] specifically targeted Missouri over any other state").  Plaintiff highlights the ability "to search for nearby stores" on the website (Am. Compl. ¶ 10), but this merely "confirms that the website was ***accessible to all but targeted at no one in particular***."  *Id.* (emphasis and bolding in original) (no jurisdiction based on website drop-down menu to select state of residence).

The nationwide accessibility of the website also means that the alleged harm—the collection of Plaintiff's website interaction data—"would have occurred no matter the state Plaintiff was in."  *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *5 (E.D. Cal. Sept. 30, 2022) (no jurisdiction where session replay software would have collected data wherever plaintiff accessed the website).  Plaintiff's decision to access the website while in Missouri is precisely the sort of "unilateral activity" of a plaintiff that the Supreme Court has held "cannot satisfy the requirement of contact with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 286, 290–91 (2014);

see *Curne v. TraxNYC Corp.*, 2019 WL 1980705, at *3 (W.D. Mo. May 3, 2019) (no jurisdiction where "Plaintiff initially reached out to Defendant via Defendant's website").

In another session replay case, a court dismissed a complaint filed against a website operator (GM) for lack of personal jurisdiction on similar facts. *Massie*, 2021 WL 2142728, at *6. In *Massie*, the plaintiff alleged that GM procured a session replay vendor to "[w]iretap" communications with visitors to its websites. *Id.* at *1. The court held that there was no personal jurisdiction over GM, because the plaintiff failed to plead facts showing that the alleged conduct— "installation of Session Replay software and purported interception of website users' electronic communications on GM's websites"—was "designed specifically to target and attract Californians (rather than customers nationwide) to GM's website." *Id.* at *4–6. The same result follows here. *See also Miguel Licea v. Caraway Home Inc.*, 2023 WL 1999496, at *9–10 (C.D. Cal. Feb. 9, 2023) (applying "*Massie*'s thorough reasoning" to dismiss a website operator for lack of personal jurisdiction in a wiretapping lawsuit premised on collection of website communications).

That leaves Plaintiff's contention that Bloomingdale's "purports to own" "customer data" "located in Missouri." Am. Compl. ¶ 11. But the language Plaintiff selectively quotes from Bloomingdale's privacy policy says nothing about *what* customer data is owned or *where* any such data is located. *See id.* ¶ 10. Bloomingdale's is located in New York (*id.* ¶ 6), and the only identified vendor to which Plaintiff alleges her data was sent (FullStory) is located in Georgia. Verdin Decl. Ex. A.[4] There are no facts alleged that Bloomingdale's receives and stores any

---

[4] The Court may take judicial notice that FullStory is incorporated in Delaware with its principal place of business in Georgia, as reflected in Exhibit A, because such information can be "accurately and readily determined" from the Georgia Secretary of State's website. *Johnson v. Gawker Media, LLC*, 2016 WL 193390, at *1, n.1 (E.D. Mo. Jan. 15, 2016) (taking judicial notice of company's state of incorporation and principle place of business listed on company website); *see* Verdin Decl. ¶ 2 (citing Georgia Secretary of State webpage reflected in Exhibit A).

website interaction data in Missouri.  That Bloomingdale's allegedly "knew" that data would be collected from Missouri residents (Am. Compl. ¶ 9) is similarly insufficient.  *Massie*, 2021 WL 2142728, at *5 (no jurisdiction based on foreseeability website interaction data would be collected from forum residents); *Mighty Good Sols., LLC v. Universal GP Prods., LLC*, 2021 WL 5548144, at *5 (W.D. Mo. Nov. 22, 2021) (no jurisdiction based on "fact that [defendant] could foresee itself causing injury in Missouri").

Implicitly conceding that Bloomingdale's has not directed any relevant conduct at Missouri, Plaintiff attempts to impute to Bloomingdale's the alleged Missouri contacts of its ultimate parent company, Macy's, Inc.  Am. Compl. ¶ 12.  This argument fails at the threshold, because there is no basis for disregarding the entities' corporate separateness, which is "an extraordinary measure reserved for exceptional circumstances," including in the personal jurisdiction context.  *Goellner-Grant v. Platinum Equity LLC*, 341 F. Supp. 3d 1022, 1029–30 (E.D. Mo. 2018).  An allegedly shared "law department" (Am. Compl. ¶ 12) is simply insufficient.  *See id.* (requiring a showing that the parent "controls and dominates the day-to-day affairs" of the subsidiary).  But even if Macy's alleged contacts with Missouri (a dozen Macy's stores, Am. Compl. ¶ 12) could be imputed to Bloomingdale's, that would not support specific jurisdiction either, because Macy's brick-and-mortar stores have no connection to the alleged data collection on Bloomingdale's website.  *Konys v. Krause-Werk GmbH & Co. KG*, 2020 WL 5230841, at *6 (E.D. Mo. Sept. 2, 2020) (declining to consider whether subsidiary's contacts are imputed to defendant, where subsidiary's contacts are not related to plaintiffs' claims).[5]

---

[5] When a plaintiff alleges intentional torts, as Plaintiff does here, courts may also employ the "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984), when evaluating specific jurisdiction.  *Zazzle*, 42 F.4th at 954.  But that test, which is employed "merely as an additional factor," *id.*, does not support jurisdiction.  Bloomingdale's only alleged connection to Missouri is through its nationally accessible website, and Plaintiff does not plead facts demonstrating that any

**B.     The Complaint Fails To Plead That Plaintiff's Claims Arise Out of or Relate to Bloomingdale's Forum Contacts.**

Plaintiff also fails to plead facts establishing that her claims arise out of or relate to Bloomingdale's alleged contacts with Missouri.  This requires specific allegations of "a connection between the forum and the specific claims at issue"—"unconnected activities" will not support specific jurisdiction.  *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865 (8th Cir. 2021).

None of the Complaint's allegations satisfy this requirement.  *See* Am. Compl. ¶ 9.  Plaintiff alleges that her claims "arise from" allegedly collected data during "website visit sessions initiated by Missourians" (*id.*), but this is irrelevant: "the relationship must arise out of contacts that the defendant *himself* creates with the forum state," not contacts initiated by forum residents.  *Walden*, 571 U.S. at 284.  Nor do Plaintiff's claims "arise from" Bloomingdale's "marketing and selling [of] goods" on its website (Am. Compl. ¶ 9).  *Massie*, 2021 WL 2142728, at *6 (rejecting similar allegation as irrelevant in finding no jurisdiction over website operator using session replay software); *see Zazzle*, 42 F.4th at 952 (fact that website operator "sells and ships lots of goods into the state" is irrelevant where only a single suit-related sale is alleged).  Plaintiff fails to even allege that she made a purchase on Bloomingdale's website.

For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed because Bloomingdale's is not subject to personal jurisdiction in Missouri on these claims.[6]

---

alleged conduct was "uniquely or expressly aimed" at Missouri, as required under the effects test.  *Id.* (no jurisdiction because "nowhere does [plaintiff] allege that [defendant] specifically targeted Missouri consumers or the Missouri market" through its "nationally accessible" website).

[6] Where, as here, the considerations of "primary importance"—the nature, quality, and quantity of Plaintiff's contacts, and the lack of any relation of Plaintiff's claims to such contacts—weigh against finding personal jurisdiction, the other considerations courts consider—"Missouri's interest in providing a forum for its residents and the parties' convenience"—"do not tip the balance" in favor of jurisdiction.  *Zazzle*, 42 F.4th at 952–54.

## II.       PLAINTIFF FAILS TO STATE ANY CLAIMS.

Even if the Court were to find personal jurisdiction over Bloomingdale's, the Amended Complaint's failure to state any claims provides an independent ground for dismissal.

### A.       The Wiretap Claims (Counts I & VI) Should Be Dismissed.

The Missouri Wiretap Act and the federal Wiretap Act upon which it was modeled provide a civil cause of action against a defendant who "intercepted" a communication.  Mo. Stat. § 542.418.2(1); 18 U.S.C. § 2520(a).  The Missouri Wiretap Act also provides a civil cause of action against a defendant who "procures any other person to intercept" a communication.  Mo. Stat. § 542.418.2(1).[7]  The Complaint fails to state a claim under either statute because (1) any alleged interception is permitted under applicable statutory exemptions, and (2) in any event, Plaintiff's communications were not "intercepted" within the meaning of either statute.[8]

#### 1.       Any Interception Was Permitted Under the One-Party Consent and Party Exemptions.

Under both Missouri and federal law, an interception is not unlawful (1) where the person carrying out the interception "is a party to the communication" or (2) "where one of the parties to the communication has given prior consent to such interception."  Mo. Stat. § 542.402.2(3); 18 U.S.C. § 2511(2)(d).  These exemptions preclude Plaintiff's claims.

---

[7] Contrary to Plaintiff's suggestion (Am. Compl. ¶ 192), "there is no civil liability for procurement" under the federal Wiretap Act.  *DirecTV, Inc. v. Lehmkuhl*, 2005 WL 8176893, at *3 (E.D. Mo. Feb. 10, 2005) (dismissing portion of claim relying on such a theory).  Both wiretap claims nonetheless fail under either a direct interception or procurement theory for the reasons below.

[8] Because Plaintiff has not plausibly alleged a predicate unlawful interception of her communications, there can be no derivative unlawful "use" or "disclosure" of such communications.  *E.g.*, Am. Compl. ¶¶ 195–96; *see* Mo. Stat. § 542.402.1(3)–(4); 18 U.S.C. § 2511(1)(c)–(d); *Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971) ("Since . . . the interception in [this] case was not obtained in violation of the [federal Wiretap] Act its subsequent use and disclosure was not a violation of the Act.").

*First*, the party exemption applies because Bloomingdale's and its vendors carrying out the alleged interception were parties to Plaintiff's communications.  A person to whom a plaintiff's communication is "sent directly to" is "necessarily one of [the] parties" to the communication.  *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142–43 (3d Cir. 2015).  Plaintiff does not and cannot dispute that Bloomingdale's was a party to Plaintiff's communications, Am. Compl. ¶ 122 (alleging Plaintiff "w[as] communicating with Bloomingdale's"), and that the party exemption thus bars any claim that Bloomingdale's itself intercepted such communications.  *Jurgens v. Build.com, Inc.*, 2017 WL 5277679, at *5–6 (E.D. Mo. Nov. 13, 2017) (dismissing wiretap claim against website operator under party exemption).[9]

Bloomingdale's session replay vendors were also parties to Plaintiff's communications, because her data was allegedly directly "sent to" those vendors (Am. Compl. ¶ 52).  *Google*, 806 F.3d at 141, 143–45 (affirming dismissal of federal Wiretap Act claim against advertisers to which plaintiffs' data was directly sent during website visits).  Plaintiff alleges that she did not know she was communicating with the vendors (Am. Compl. ¶ 122), but that is irrelevant.  *Google*, 806 F.3d at 143–45 (party exemption applied even though advertisers "procured their entrance to a conversation [with website] through a fraud"); *United States v. Griggs*, 54 F.4th 531, 536 (8th Cir. 2022) (party exemption applied even though police officer posed as another person).  The party exemption bars any claim premised on the vendors' alleged interception for the independent reason that the vendors, as service providers, are nothing more than an "extension" of a party (Bloomingdale's) to Plaintiff's communications.  *See, e.g.*, *Graham v. Noom, Inc.*, 533 F. Supp.

---

[9] When interpreting the Missouri Wiretap Act, Missouri courts consider "authority . . . interpreting similar statutes, including the federal wiretap act," upon which the Missouri Wiretap Act was modeled.  *State v. King*, 873 S.W.2d 905, 908–09 (Mo. Ct. App. 1994).

3d 823, 832 (N.D. Cal. 2021) (applying same reasoning to dismiss a California wiretap claim against a session replay vendor).

*Second*, the one-party consent exemption applies because Bloomingdale's, an undisputed party to Plaintiff's communications, consented to any alleged interception. Bloomingdale's necessarily consented to any interception carried out by itself. Bloomingdale's likewise consented to any interception carried out by its session replay vendors.

Courts routinely dismiss wiretap claims under this exemption when the owner of a website permits another to intercept its communications with website visitors. *See, e.g.*, *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (affirming dismissal of federal Wiretap Act claim where website owner "permitted" third-party advertiser to intercept its communications with website visitors); *Allen v. Quicken Loans Inc.*, 2018 WL 5874088, at *4–5 (D.N.J. Nov. 9, 2018) (dismissing federal Wiretap Act claim where website owner permitted third-party marketing company to intercept website visitor's keystrokes and mouse clicks); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 511 (S.D.N.Y. 2001) (similar).

The same result follows here. Plaintiff alleges that Bloomingdale's hired session replay vendors "for the purpose of intercepting" communications with website visitors (Am. Compl. ¶ 1); thus, Bloomingdale's has necessarily "given prior consent to" any "such interception" by those vendors. Mo. Stat. § 542.402.2(3); 18 U.S.C. § 2511(2)(d); *cf. DoubleClick*, 154 F. Supp. 2d at 510 (finding "implausible" that a website did not authorize a vendor to access plaintiff's website communications, when such access was "the defining characteristic of [the vendor's] . . . service"). It makes no difference that *Plaintiff* allegedly "did not consent" (Am. Compl. ¶ 127), because only "one of the parties" must give consent. *Lewellen v. Raff*, 843 F.2d 1103, 1115 (8th Cir. 1988) (no unlawful interception where one party consented to a third party recording the communication).

These statutory exemptions do not apply when a communication is intercepted "for the purpose of committing any criminal or tortious act," Mo. Stat. § 542.402.2(3); 18 U.S.C. § 2511(2)(d), that is "*independent* of the intentional act of recording." *Jurgens*, 2017 WL 5277679, at *5 n.4 (emphasis in original). But no such independent purpose is alleged here. The alleged purpose of committing an "intrusion" and "unfair" business practice (*see* Am. Compl. ¶ 204) is insufficient. The only asserted claims for intrusion (intrusion-upon-seclusion) and unfairness (under the MMPA) arise from the alleged act of recording itself. Am. Compl. ¶¶ 131–65. Indeed, *every* claim is premised on this alleged underlying conduct. But "[a] simultaneous tort arising from the act of recording itself is insufficient" to invoke the crime-tort exception. *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (no crime-tort exception based on intrusion upon seclusion claim); *Google*, 806 F.3d at 145 & n.81 (same).[10]

## 2. Plaintiff's Communications Were Not Intercepted.

The Missouri Wiretap Act defines "intercept" as "the *aural acquisition* of the *contents* of any wire communication through the use of any electronic or mechanical *device*," Mo. Stat. § 542.400(6) (emphases added), "*contemporaneously* with the transmission of the communication," *see Jurgens*, 2017 WL 5277679, at *5 (addressing analogous federal Wiretap Act). The federal Wiretap Act contains a similar definition except that it also applies to other non-aural "acquisition[s]." 18 U.S.C. § 2510(4). Plaintiff pleads none of the italicized requirements.

---

[10] Nor has Plaintiff satisfied the requirement to plead that any independent tortious purpose was "the primary motivation" or "a determinative factor" in intercepting her communications. *DoubleClick*, 154 F. Supp. 2d at 518). At most, the Complaint suggests a motivation "to increase . . . profit margins" (Am. Compl. ¶ 198), but that is not an improper purpose. *Id.* ("pursuit of commercial gain [is] a goal courts have found permissible"); *see In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) ("[T]he tort or crime exception cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.").

*First*, the alleged data collection does not constitute an "aural acquisition" of Plaintiff's communications, which is fatal to the Missouri Wiretap Act claim. Mo. Stat. § 542.400(6). "An 'aural acquisition' by definition engages the sense of hearing." *United States v. Sw. Bell Tel. Co.*, 546 F.2d 243, 245 (8th Cir. 1976). The alleged data collection, unlike the recording of telephone communications, does not engage the sense of hearing. *United States v. Gregg*, 829 F.2d 1430, 1434 (8th Cir. 1987) (no "aural" acquisition where interception "does not involve hearing sounds of the voice"). Such collection allegedly occurs "by sending hyper-frequent logs" to session replay vendors. Am. Compl. ¶ 57. Although the federal Wiretap Act was amended to include "other acquisition[s]" that may encompass such "nonvoice portion[s] of a wire communication," *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 461, 462 (5th Cir. 1994), the Missouri Wiretap Act continues to exclude the non-aural acquisitions of which Plaintiff complains.

*Second*, software code on a website is not a "device." The Complaint alleges that "[s]ession replay technology"—described as "computer code" that is "embedded in Bloomingdale's website"—"is . . . [a] device.'" Am. Compl. ¶¶ 28, 76, 121, 145. But a "device" is defined as "any device or apparatus which can be used to intercept" a communication. Mo. Stat. § 542.400(5); 18 U.S.C. § 2510(5). The phrase "device or apparatus" "calls to mind" something tangible like "a piece of equipment"; it does not encompass intangible software code. *See Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 462–63 (D. Md. 2015) (software not a "device" or "apparatus"); *see also State v. Rowe*, 63 S.W.3d 647, 650 (Mo. 2002) (Missouri courts interpret statutes according to their "plain and ordinary meaning"). This Court should, for that reason, follow the many courts that have dismissed wiretap claims involving the use of session replay or other software. *See, e.g.*, *Potter v. Havlicek*, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (dismissing federal Wiretap Act claim because "the word 'device' does not encompass software");

*Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *5 (Fla. Cir. Ct. June 17, 2021) (dismissing Florida wiretap claim because session replay software is not a "device or apparatus"); *Cardoso v. Whirlpool Corp.*, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021) (same).[11]

*Third*, the Complaint does not allege the collection of the "contents" of any communication. "Contents" is defined as "any information concerning" (1) "the substance, purport, or meaning of that communication," 18 U.S.C. § 2510(8); Mo. Stat. § 542.400(3), or (2) "the identity of the parties," Mo. Stat. § 542.400(3). Neither type of information was allegedly collected here. Plaintiff does not allege that any information purportedly collected concerned her "identity." And the type of information that was allegedly collected by session replay software— "mouse movements," "clicks," "keystrokes," and "URLs of web pages visited" (Am. Compl. ¶ 1)—"is the cyber analog to record information [a defendant] could have obtained through a security camera at a brick-and-mortar store"; such tracking information "d[oes] not convey the substance of any particular communication." *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321–22 (S.D. Fla. 2021) (holding that the same type of information is not "contents" under Florida wiretap law); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (same under California wiretap law).

*Finally*, the Complaint fails to plead facts supporting her conclusory allegation that her communications were acquired "contemporaneously with their transmission." Am. Compl. ¶ 125.

---

[11] The Complaint's list of other alleged "devices" is not plausible. *See* Am. Compl. ¶ 191(d). The basic premise of Plaintiff's claim is that her communications were allegedly intercepted through the "use of session replay technology [*i.e.*, software code] *embedded in www.bloomingdales.com*," not through the use of Plaintiff's own "computing device" or "browser" or Bloomingdale's "web-servers." *Id.* ¶¶ 4, 191(d) (emphasis added). Nor are a defendant's servers receiving a plaintiff's communications a "device." *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447, at *4, 5 (E.D. Pa. Dec. 13, 2007) (defendant's "server on which an e-mail is received does not constitute a device"); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (same).

Plaintiff alleges that her communications were "acquir[ed] . . . out of electronic storage." *Id.* ¶ 232.  The problem for Plaintiff is that an interception is "contemporaneous" only when the interception occurs "in transit"; it does not encompass "the acquisition of stored electronic communications." *Leitner v. Morsovillo*, 2022 WL 7074322, at *6 (W.D. Mo. Oct. 12, 2022) (collecting cases).  Her claim should therefore be dismissed on this independent basis.  *See, e.g.*, *Jacome*, 2021 WL 3087860, at *6 (dismissing similar wiretap claim where the allegations were "insufficient to demonstrate that any interception happened contemporaneously with transmission as opposed to being retrieved from storage"); *Cardoso*, 2021 WL 2820822, at *2 (same).

**B.     The Derivative State Claims Should Be Dismissed.**

Plaintiff's tag-along Missouri state claims are premised on the same alleged wiretapping conduct, and they should be dismissed for the reasons set forth below.

**1.     The Missouri Merchandising Practices Act Claim (Count II) Should Be Dismissed.**

To state a claim under the Missouri Merchandising Practices Act (MMPA), Plaintiff must allege that she (1) "purchased merchandise," (2) "primarily for personal or household purposes," and (3) "suffered an ascertainable loss" (4) "as a result of an act made unlawful by the MMPA." *Hennessey v. Gap, Inc.*, 2022 WL 4447399, at *4 (E.D. Mo. Sept. 23, 2022) (Pitlyk, J.).  She has failed to state such a claim, for several reasons.

*First*, Plaintiff fails to allege that she purchased any merchandise from Bloomingdale's, which is fatal to her claim.  *See, e.g.*, *Tolu v. Reid*, 639 S.W.3d 504, 539 (Mo. Ct. App. 2021) (affirming dismissal for failure to allege a purchase); *Hug v. Am. Traffic Sols., Inc.*, 2014 WL 2611832, at *5 (E.D. Mo. June 11, 2014) (dismissing claim because complaint "does not state Plaintiffs purchased any merchandise or services from Defendant").  Plaintiff's allegation that she visited Bloomingdale's website with the intent "to shop for, purchase, and/or contract to purchase

- 14 -

'merchandise,'" (Am. Compl. ¶ 137), does not save her claim, because the MMPA provides a cause of action "for one who purchases, not one who attempts or offers to purchase." *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675, 677 (Mo. Ct. App. 1984).

*Second*, because Plaintiff fails to allege that she made a purchase from Bloomingdale's, she cannot plead an ascertainable loss. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 445 (8th Cir. 2014) (affirming dismissal for failure to allege ascertainable loss which "follows from the conceded absence of any charge" to plaintiff by defendant).

*Third*, Plaintiff fails to allege facts showing an unlawful act under the MMPA.  Her MMPA claim is premised on the deficient wiretapping allegations: that Bloomingdale's "fail[ed] to disclose" to Plaintiff that it "intercept[s]" and "discloses" to its vendors website interaction data. Am. Compl. ¶¶ 144, 148, 151.  Because there was no interception and any interception (or subsequent disclosure) was not unlawful (*supra* at pp. 8–14 & n.8), such a failure to disclose is not actionable.  *Est. of Byas v. Wells Fargo Home Mortg.*, 2020 WL 7240352, at *6 (E.D. Mo. Dec. 9, 2020) (no MMPA claim based on failure to disclose conduct that "is not illegal").  In any event, Bloomingdale's *did* disclose the alleged conduct in its website's privacy policy.  Verdin Decl. Ex. B at 3–4, 6 (disclosing that Bloomingdale's "collects . . . information regarding your interactions with our Platforms," and "may share your information" with "[s]ervice [p]roviders").[12]

## 2.    The Intrusion Claim (Count III) Should Be Dismissed.

Plaintiff fails to plead the elements of an intrusion upon seclusion claim: (1) "the existence of a secret and private subject matter," (2) "a right in the plaintiff to keep that subject matter

---

[12] The Court may consider the privacy policy disclosures on Bloomingdale's website that governed Plaintiff's claims as of the date of filing the Complaint as "necessarily embraced by the pleadings," *Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018), because the disclosures contradict Plaintiff's allegation that such disclosures were omitted. *See, e.g.*, *Doe v. Washington Univ.*, 2021 WL 4504387, at *8 (E.D. Mo. Sept. 30, 2021) (considering university policies on website where website was cited in complaint and the policies contradicted allegation of degree requirements).

private," and (3) "the obtaining by the defendant of information about that subject matter through unreasonable means." *Petri v. Valarity, LLC*, 2015 WL 7253061, at *2 (E.D. Mo. Nov. 17, 2015).

*First*, there was no intrusion upon any secret or private information.  A plaintiff must demonstrate a "reasonable expectation of privacy" over such information. *Sutherland v. Massa*, 2010 WL 11545751, at *2 (W.D. Mo. Sept. 16, 2010).  Plaintiff fails to do so because she acted in a manner inconsistent with that expectation by voluntarily providing the allegedly collected mouse clicks and keystrokes to Bloomingdale's. *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (no reasonable expectation of privacy over data provided to website operator and session replay provider).  Bloomingdale's disclosure of the alleged data collection in its privacy policy (*supra* at p. 15) further demonstrates that Plaintiff's asserted expectation of privacy is not reasonable. *United States v. Hoeffener*, 2018 WL 2996317, at *11 (E.D. Mo. May 9, 2018) (no reasonable expectation of privacy where a disclosure "warned" of the alleged conduct).

*Second*, the Complaint does not plead that Bloomingdale's obtained Plaintiff's communications through unreasonable means, because Plaintiff alleges that *she* communicated with—and thus voluntarily disclosed her communications to—Bloomingdale's (Am. Compl. ¶¶ 49, 61, 137). *Howard v. Frost Nat'l Bank*, 458 S.W.3d 849, 854 (Mo. Ct. App. 2015) (no unreasonable obtainment where plaintiffs voluntarily disclosed information at issue to defendants).  Nor is any such obtainment unreasonable for the additional reason that it is not "highly offensive to a reasonable person." *Sofka v. Thal*, 662 S.W.2d 502, 510–11 (Mo. 1983).  "The act of collecting [a plaintiff's] keystrokes, mouse clicks, and PII is simply not the type of highly offensive act to which liability can attach." *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 123 (W.D. Pa. 2019) (dismissing intrusion claim against website operator under Pennsylvania law).

**3.   The Trespass And Conversion Claims (Count IV & V) Should Be Dismissed.**

Trespass to chattels and conversion are "very similar": both "require a chattel to be involved" with a "significant difference" being that trespass "requires proof of an unlawful taking," while conversion requires "the wrongful exercise of dominion over property." *Burgess v. Am. Fam. Mut. Ins. Co.*, 2007 WL 1452512, at *4 (W.D. Mo. May 15, 2007).  Both claims fail.

*First*, the allegedly collected data—Plaintiff's communications with Bloomingdale's—is not "chattel."  *McMasters v. Hendrickson USA, LLC*, 2016 WL 5796908, at *13 (W.D. Ky. Sept. 30, 2016) ("data is not chattel").  Chattel is "personal property," *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 600 (Mo. Ct. App. 2000), which must be "capable of exclusive possession or control," *Missouri Ozarks Radio, Network, Inc. v. Baugh*, 598 S.W.3d 154, 161 (Mo. Ct. App. 2020).  Plaintiff's communications with Bloomingdale's are incapable of exclusive possession by their very nature, because they are necessarily possessed by the sender (Plaintiff) and the recipient (Bloomingdale's).  *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012) ("browsing history" on defendant's website not property).

 *Second*, there was no "unlawful taking" of or "wrongful exercise of dominion" over Plaintiff's data.   Plaintiff voluntarily provided the data when she "communicat[ed] with Bloomingdale's" (Am. Compl. ¶ 122).  *See Pope v. Cordell*, 47 Mo. 251, 253 (Mo. 1871) (no trespass where plaintiff's animals "had voluntarily come" to defendant's premises); *Hahn v. Tanksley*, 317 S.W.3d 145, 153, 156 (Mo. Ct. App. 2010) (no conversion where plaintiff "voluntarily" transferred property).  Nor was it "unlawful" or "wrongful," because the alleged data collection was authorized under the Missouri and federal Wiretap Acts' exemptions (*supra* at pp. 8–11).  *See Foremost Ins. Co. v. Pub. Serv. Comm'n of Mo.*, 985 S.W.2d 793, 797 (Mo. Ct. App. 1998) (no trespass if defendant "was authorized to do what he did").

*Third*, to the extent Plaintiff's claims are based on her "computer and/or mobile device" allegedly containing such data (Am. Compl. ¶¶ 169, 176), there are no factual allegations that Bloomingdale's took or controlled her devices.  Plaintiff's conclusory allegation of "interference" with her devices (*id.* ¶¶ 170, 180) is insufficient.  *See, e.g.*, *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *10 (S.D.N.Y. Aug. 17, 2016) (no trespass where there were no factual allegations that collection of website tracking data "damage[d]" or "impair[ed] the functioning" of plaintiffs' computing devices); *Riley v. L.J. Schuster Co.*, 844 S.W.2d 521, 523 (Mo. Ct. App. 1992) (no conversion where defendant "did [not] exclude" plaintiff from using property).

## C.   The Derivative Federal Claims Should Be Dismissed.

The remaining federal claims asserting that Bloomingdale's unlawfully accessed and disclosed her communications are likewise deficient.

### 1.   The Access Claims (Counts VIII & X) Should Be Dismissed.

Plaintiff asserts that Bloomingdale's accessed her communications with Bloomingdale's on her "web-browsers and computing devices" in violation of (1) section 2701(a) of the Stored Communications Act ("SCA"), and (2) section 1030(a)(2)(c) of the Computer Fraud and Abuse Act ("CFAA").  *Id.* ¶¶ 224, 255.  Both provisions prohibit a person from accessing information on covered devices "without authorization" or "exceed[ing] an authorization to access" a covered device.  18 U.S.C. § 2701(a); *see* 18 U.S.C. § 1030(a)(2)(c).  Her claims fail for multiple reasons.

*First*, Plaintiff fails plausibly to allege that Bloomingdale's accessed her communications on her devices "without authorization" or "exceeded" such authorization.  Plaintiff voluntarily provided Bloomingdale's with access when she "communicat[ed] with Bloomingdale's."  Am. Compl. ¶ 122.  She cannot claim that such access was unauthorized.  And there are no allegations that Bloomingdale's exceeded its authorization by obtaining anything other than the communications to which it was a party.  *Lasco Foods, Inc. v.  Hall & Shaw Sales, Mktg. &*

*Consulting, LLC*, 600 F. Supp. 2d 1045, 1049, 1050 (E.D. Mo. 2009) (explaining that the SCA and CFAA access provisions target "outside, third parties" and dismissing claims where the plaintiff "has not identified any restricted information that [his employer] supposedly accessed").

*Second*, the SCA claim independently fails because Plaintiff's "web-browsers and computing devices" (Am. Compl. ¶¶ 224) are not covered devices.  Covered devices include only "facilit[ies] through which an electronic communication service is provided"—that is, "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. §§ 2510(15), 2701(a).  But such devices encompass facilities "where network service providers store private communications," *not* "personal web browsers" or "personal computing device[s]" used to access the internet like Plaintiff alleges here.  *Google*, 806 F.3d at 146 (collecting cases and affirming dismissal of SCA claim on the same grounds); *see also Goodman v. Goodman*, 2022 WL 17826390, at *18 (S.D.N.Y. Dec. 21, 2022) (collecting cases " consistently declin[ing] to treat personal computers . . . as facilities for SCA purposes").

*Third*, the CFAA claim independently fails because Plaintiff fails to plead any "damage or loss" from Bloomingdale's accessing her communications, as is required to state her claim. *Gridiron Mgmt. Grp. LLC v. Wranglers*, 2012 WL 5187839, at *10 (D. Neb. Oct. 18, 2012) (quoting 18 U.S.C. § 1030(g)).  Plaintiff alleges nothing more than the "transmission" of her communications to Bloomingdale's vendor, and no loss related to her computer or mobile device itself.  *See* Am. Compl. ¶¶ 256–57.  This is insufficient, because "damage does not encompass harm from the mere disclosure of information," and "[p]urely economic harm unrelated to the computer systems is not covered by th[e] definition of loss."  *Id.* at *10 (no CFAA claim based on mere disclosure of information); *see also, e.g.*, *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 721 n.13 (N.D. Ill. 2009) (no CFAA claim based on failure to allege computer-related loss).

### 2.     The Disclosure Claims (Counts VII & IX) Should Be Dismissed.

Plaintiff also asserts that Bloomingdale's unlawfully disclosed her communications with Bloomingdale's in violation of (1) section 2511(3)(a) of the Electronic Communications Privacy Act (ECPA), and (2) section 2702(a)(1) of the SCA.  Am. Compl. ¶¶ 211, 231.  These provisions prohibit "a person or entity providing an electronic communication service to the public" from disclosing the "contents" of a communication "while in transmission" (under the ECPA) or "while in electronic storage" (under the SCA).  18 U.S.C. §§ 2511(3)(a), 2702(a)(1).

Here, Plaintiff admits that "Defendant [Bloomingdale's] is not a provider of wire or electronic communication services."  Am. Compl. ¶ 63.  That admission is fatal to both disclosure claims, which apply only to electronic communication service providers.  18 U.S.C. §§ 2511(3)(a), 2702(a)(1); *see L.L. Nelson Enters., Inc. v. Cnty. of St. Louis*, 673 F.3d 799, 806 (8th Cir. 2012) ("Allegations in a complaint are binding admissions").  Indeed, courts routinely hold that such providers encompass "internet service providers as well as telecommunications companies whose lines carry internet traffic," not "businesses" like Bloomingdale's "selling traditional products or services online."  *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1199 (D.N.D. 2004) (collecting cases and dismissing claim against website operator); *see Pipeline Prods., Inc. v. S&A Pizza, Inc.*, 2020 WL 4506090, at *3 (W.D. Mo. Aug. 5, 2020) ("[C]ourts have distinguished those entities that sell access to the internet from those that sell goods or services on the internet").[13]

### CONCLUSION

This Court should dismiss the Amended Complaint in its entirety.

---

[13] Plaintiff also fails to plead that the "contents" of her communications were collected or disclosed.  *See supra* at p. 13.

Dated:  February 16, 2023                    Respectfully Submitted:


/s/ *Emily Johnson Henn*
Emily Johnson Henn (*pro hac vice*)
ehenn@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Cortlin H. Lannin (*pro hac vice pending*)
clannin@cov.com
Matthew Q. Verdin (*pro hac vice*)
mverdin@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Fax: (415) 591-6091

Chad D. Silker (#57522MO)
chad.silker@macys.com
MACY'S LAW DEPARTMENT
11477 Olde Cabin Road, Suite 400
St. Louis, MO 63141
Telephone: (314) 342-6379
Facsimile: (314) 342-6366

*Attorneys for Defendant*
*Bloomingdales.com, LLC*